UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHECTER LANDSCAPING, INC.,

    Plaintiff,
v.                                         Case No. 22-10106
                                              Honorable Victoria A. Roberts

JPMORGAN CHASE BANK NA
DBA CHASE BANK

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [ECF No. 4]

### I. Introduction

Shecter Landscaping ("Shecter") filed this action against JP Morgan Chase Bank ("Chase") alleging three causes of action: (1) negligence by allowing a third party ("Impostor") to open a bank account ("Impostor Account") in the same or similar name as Shecter and by failing to freeze an $85,316 wire transfer one of Shecter's clients ("Client") sent to the Impostor Account; (2) conversion for aiding the Impostor to open the account and withdraw the $85,316; and (3) civil conspiracy for acting in concert with the Impostor.

The Court **GRANTS** Chase's motion to dismiss in its entirety.

1

## II. Background

Shecter is a landscaping company that provides high-end landscaping design and services to customers located in the metro Detroit area. It maintained a deposit account with Chase to receive client payments via wire transfer. A cyberattack on Shecter resulted in the compromise of its email system; after the cyberattack, an unknown third party opened an account at Chase in the same or similar name as Shecter's.

This Impostor sent one of Shecter's clients an email with instruction to send an $85,316 wire transfer to the Impostor Account. Around February 4, 2021, the Client did wire transfer the funds believing it would pay an outstanding balance owed to Shecter. Shecter contacted the Client after it did not receive payment. The Client informed Shecter that it sent the payment as instructed in the email. This is when Shecter learned that it was the victim of a cyberattack.

Shecter claims that it contacted Chase, complained about the fraud, and reported the fraud to the Keego Harbor Police Department. A Chase employee informed Shecter that the $85,316 was still in the Impostor Account and that Chase would freeze it to prevent withdrawal. Nonetheless, the $85,316 was withdrawn by a third party.

On April 2, 2021, Chase sent a letter to Shecter in response to its complaint. The letter said Chase received and deposited the funds to the account number the sender provided and that it was not required to review the account name. Neither the Client nor Shecter recovered the money.

### III. Legal Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). A court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

## IV. Analysis

Shecter brings three claims against Chase: (1) negligence; (2) conversion; and (3) civil conspiracy. It says Chase is liable to it because Chase allowed the Impostor to open a bank account without taking reasonable fraud prevention measures and failed to freeze the account after Shecter notified the bank of potential fraud.

In its motion to dismiss, Chase argues that Article 4A of the Uniform Commercial Code ("UCC") preempts all of the claims [ECF No.4; PageID.7] and that Shecter failed to plausibly allege facts sufficient to show that Chase owed it a duty of care. [*Id*; PageID.21].

### A. Article 4A Preemption

Article 4A of the UCC governs electronic fund transfers. Michigan codified the Article 4A provisions in its UCC. *See* MCL § 440.4601 *et seq*. Article 4A is limited to fund transfers. MCL § 440.4602. Michigan's Article 4A defines "fund transfers" as:

> the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. The term includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

Article 4A is "intended to be the exclusive means of determining the rights, duties, and liabilities of the affected parties in any situation covered by particular provisions of the Article." MCL § 440.4602 & cmt. Situations covered by Article 4A include certain security procedures with respect to the issuance and acceptance of payment orders (§§ 440.4701 – 440.4712), the execution of a sender's payment order by the receiving bank (§§ 440.4801 – 440.4805), the timeliness of payments (§§ 440.4901 – 440.4906), and miscellaneous provisions (§§ 440.4951 – 440.4957).

Article 4A displaces common law claims relating to wire transfers if the claims arise out of a situation addressed by Article 4A. *Wright v. Citizen's Bank of East Tennessee*, 640 Fed.Appx. 401, 406 (6th Cir. 2016). "Article 4A's text strongly suggests that it applies to claims asserting the existence of unauthorized wire transfers regardless of what the claims may be called ..." *Id*. (quoting *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 90 (2d Cir. 2010)).

For purposes of determining the applicability of Article 4A to this case, the payment order is the $85,316 wire instruction; the originator of the payment order is Shecter's Client; the beneficiary is the Impostor Account;

the beneficiary bank is Chase; and the originator bank is Bank of America. By statute, the covered transaction began with the Client's payment order.

Shecter is correct that Article 4A may not pertain to that portion of his negligence claim that Chase allowed the Impostor to open an account in the first place without collecting pertinent information and by failing to create or implement adequate identify theft protections. The mere opening of the account had nothing to do with the subsequent transfer of funds into the Impostor Account that rightfully belonged to Shecter.

*Wright* is instructive. In *Wright*, the plaintiffs authorized a same day wire transfer to pay a margin call. However, the bank teller erroneously entered the beneficiary's account number and the wire transfer did not go through that day; funds were returned to the bank. The next morning, the same bank teller discovered the error and used white out on the wire-transfer form the plaintiff signed the day before, fixed the beneficiary account number and successfully resent the wire transfer. The plaintiffs alleged they did not authorize anyone from the bank to send the wire transfer that following morning.

*Wright* held that Article 4A displaced the plaintiffs' claims because the teller merely delayed completing a wire transfer requested by a customer; a situation specifically addressed by Article 4A.

*Wright* was guided by the Second Circuit decision in *Ma v. Merrill Lynch*. In *Ma*, the plaintiff claimed one of the bank's employees submitted unauthorized transfers from plaintiff's account to another account as part of a larger fraudulent scheme in which the bank employee was ultimately convicted. *Ma* held that the plaintiff's claims were preempted by Article 4A because at their core all of his claims asserted that he did not order or approve any of the transfers addressed in Article 4A. *Ma*, 597 F.3d at. 90.

*Ma* provided that "[n]ot all common law claims are per se inconsistent with this [Article 4] regime…Claims that, for example, are not about the mechanics of how a funds transfer was conducted may fall outside of [Article 4A's] regime." *Id.* at 89.

The guidance gleaned from *Ma* and other cases is that Article 4A preemption is limited to wire transfers and transactions. *See Sheerbonnet, Ltd. v. Am. Express Bank, Ltd*. 951 F.Supp. 403, 407-09 (S.D.N.Y. 1995) ("The rules of [Article 4A] are transactional, aimed essentially at resolving conflicts created by erroneous instruction or execution of payment orders,

7

whether by the originator, by an intermediary or receiving bank, or by the beneficiary's bank… Errors may occur during the issuance and acceptance of the payment order – as when a payment order is made for the wrong amount, or identifies the wrong beneficiary, or … is untimely cancelled. Errors may also occur during the execution of the payment order by the receiving bank – as when the originator's instructions are not followed, or the order is executed late, or is issued in an improper amount, or is not executed at all.").

Against this backdrop, the Court analyzes that portion of Count I which suggests Chase was negligent for allowing the Impostor to open the account. The Court will then turn attention to the balance of Count I and Counts II and III.

## B. Count I (Negligence): Opening of Impostor Account

Shecter alleges Chase was negligent by allowing the Impostor to open an account without proof of ownership, authorization, or identification. [ECF No. 1, PageID.12, ¶ 41].

In its motion, Chase rests on a blanket preemption argument to dismiss this claim: "Article 4A, of the UCC, which defines all of Chase's obligations in accepting a wire transfer, as well as Chase's obligations after

the money was deposited in a beneficiary's account, preempts all of Plaintiff's claims." [ECF No. 4, PageID.57]. Chase reads Article 4A far too broadly.

This portion of Count I is not displaced by Article 4A because it does not deal with a funds transfer, although Shecter makes the argument that the existence of the Imposter account facilitated the fraudulent wire transfer.

In facts almost identical to this, a handful of courts agree that negligence claims premised on the opening of fraudulent accounts are not preempted by Article 4A. *See Fragale v. Wells Fargo Bank*, *N.A.*, 480 F.Supp.3d 653, 660 (E.D. Pa. Aug. 19, 2020) ("By definition, Article 4A governs only those actions occurring between the originator's wire fund instruction and the beneficiary bank's acceptance of the wire transferred funds … Thus, any claim premised on the opening of the Account falls outside the scope of Article 4A."); *Attisha Enterprises, Inc. v. Capital One, N.A.*, 505 F.Supp.3d 1051, 1056 (S.D. Cal. Dec. 7, 2020) (holding Article 4A does not preempt negligence claims premised on opening a fraud account because California's commercial code does not apply to opening an account); *Nirav Ingredients, Inc v. Wells Fargo Bank, N.A.*, 516 F.Supp.3d 535, 540 (W.D. N.C. Jan. 28, 2021) ("the Court will allow Nirav's state law

negligence claim to proceed to the limited extent Plaintiffs rely on conduct relating to the opening and maintaining of a fraudulent account."); *Remtek Svcs., Inc. v. Wells Fargo Bank, N.A.*, No. 19-12790, 2020 WL 241332, at *4 (D.N.J. Jan. 16, 2020) (holding that Article 4A did not bar the plaintiff's claim "asserting that Wells Fargo was negligent in allowing the fraudsters to open an account in the first place.").

Even though this portion of Shecter's negligence count is not preempted, it is still subject to dismissal because at its core it is a contract claim masquerading as a negligence one and cannot prevail for that reason alone.

In its complaint, Shecter refers to the signed Deposit Account Agreement between it and Chase as a contract between the parties. [ECF No. 1; PageID.8, ¶ 5].

In its response brief, Shecter says "Plaintiffs [sic] Complaint alleges that Defendant Chase failed to obtain the necessary information pursuant to law and contract noted above." [ECF No.5, PageID.107]. Shecter alleges no other duty owed to it.

Under Michigan law, tort actions based on a contract require that a "defendant [owe] a duty to the plaintiff that is separate and distinct from the

10

defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Fultz v. Union-Commerce Assoc.,* 470 Mich. 460, 467, 683 N.W.2d 587, 592 (2004). *See also Galati v. Wells Fargo Bank*, No. 11-11487, 2011 WL 5178276, at *8 (E.D. Mich. Nov. 1, 2011).

Shecter is unable to point to an independent duty. And, in a footnote in its response brief, Shecter says it is unable to find a published or unpublished opinion in Michigan either adopting or rejecting the cause of action commonly known as negligent enablement of impostor fraud. Instead, he says "Michigan law either does or should recognize a duty pertaining to enablement of imposter fraud." [ECF No. 5, PageID.107].

This Court declines to create a new cause of action.

The contract between the two parties says in relevant part:

> Federal law requires all financial institutions to obtain, verify, and record information that identifies each person or business who opens an account. We require the following information or documents as a condition to your opening an account: . . . For a business account: your business name, taxpayer identification number and business address; the name, residential address, date of birth and Social Security number of each signer, so we can verify the signer's identity; and documents to verify the business's existence.

[ECF No. 4, PageID.67, ¶ 12].

11

The federal law referred to in the parties' contract is the Bank Secrecy Act ("BSA"), 28 U.S.C. § 5311, et seq. Shecter cannot challenge Chase's compliance with the federal law as "the [BSA] does not provide a private right of action." *AmSouth Bank v. Dale*, 386 F.3d 763, 777 (6th Cir. 2004).

Because the Deposit Account Agreement governed the parties' relationship and Chase had no duty to Shecter outside of this contract, the Court **GRANTS** Defendant's motion to dismiss that portion of Count I which alleges negligence in the opening of the Impostor Account.

### C. Count I: Failure to Freeze the Funds in Impostor Account

The balance of allegations in Count I pertains to Chase's failure to freeze funds in the Impostor Account. These allegations mimic the allegations in Count II (Conversion) which the Court discusses below. For the same reasons, the balance of Count I is displaced by Article 4A.

### D. Count II (Conversion)

Shecter alleges Chase converted its funds because it did not freeze the Impostor Account, nor did it recover the funds after being notified of the fraudulent transaction. [ECF No. 1, PageID.14, ¶ 48]. The conversion claim is preempted by Article 4A.

Once a beneficiary bank accepts a payment order, it is obliged to pay the beneficiary. MCL § 440.4904. "After a payment order has been accepted, cancellation, or amendment of the order is not effective unless the receiving bank *agrees* or a funds-transfer system rule allows cancellation or amendment without agreement of the bank." MCL § 440.4711(3). The receiving bank has the discretion to cancel or amend a payment order after accepting it.

Chase accepted the payment order from Shecter's Client and distributed those funds to the account number identified in the wire instructions. Even if Shecter contacted Chase to freeze the account, the bank was not required to honor that request: "Imposing liability on a receiving bank for declining to agree to cancel a funds transfer would be inconsistent with Article 4A." *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 2018 WL 8334591, at *4 (S.D. Fla. Apr. 4, 2018), aff'd, 795 Fed. Appx. 741 (11th Cir. 2019) (negligence claim preempted by UCC); *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 104 (2d Cir. 1998) ("Any common law claim that would impose liability on Citibank for failing to cancel BCN's payment order is precluded as inconsistent with Article 4–A.").

At least one judge in this district reached the same conclusion. In *Kirschner v. Wells Fargo Bank*, No. 21-10785, 2021 WL 5545957 (E.D. Mich. July 19, 2021), the plaintiffs received an email from an impostor instructing them to wire funds to a Wells Fargo account. The plaintiffs contacted their bank to authorize the wire transfer, not knowing they authorized a wire to a fraudulent account. Plaintiffs contacted Wells Fargo to recall the wire; Wells Fargo refused. The plaintiffs brought suit against Wells Fargo for conversion. The court held that plaintiffs' conversion claim was preempted because Article 4A does not require a bank to return funds.

Because Shecter's conversion claim arises out of a situation that is clearly addressed by Article 4A, Shecter's common law conversion claim is preempted.

Shecter's statutory conversion claim fails as well. "In order to prevail on a claim for statutory conversion, a plaintiff must satisfy the elements of a common law conversion claim, as well as demonstrate that the defendant had "actual knowledge" of the converting activity." *Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, 106 F.Supp.3d 874, 887 (E.D. Mich. May 22, 2015) .

Because Shecter is unable to prevail on its common law claim, its statutory conversion claim fails.

The Court **GRANTS** Defendant's motion to dismiss Count II (Conversion).

### E. Count III (Civil Conspiracy)

Shecter's civil conspiracy claim alleges that Chase acted in concert with the Impostor in allowing the Impostor Account to open and for the funds to be withdrawn. [ECF No. 1, PageID.44, ¶ 53].

Chase moved to dismiss the claim on the ground that Shecter cannot prevail absent a separate, actionable tort. Shecter failed to respond to Chase's argument. "[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Scott v. State of Tenn.*, 878 F.2d 382, 382 (6th Cir. 1989).

Finally, Chase is correct that under Michigan law, a civil conspiracy claim must be coupled with an actionable tort. *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich.App. 365, 670 N.W.2d 569, 580. As discussed, Shecter does not allege an actionable tort.

Shecter waived opposition to Chase's motion to dismiss this count. Substantively, it fails anyway.

The Court **GRANTS** Chase's motion to dismiss Count III (Civil Conspiracy) pursuant to 12(b)(6).

## V. Conclusion

The Court construed Shecter's complaint in the light most favorable to it, and **GRANTS** Chase's motion to dismiss.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 12, 2022